MAX P. ENGEL AND LILLIAN ENGEL, Petitioners v. COMMISSIONER OF INTERNAL REVENUE, Respondent
Engel v. Commissioner
Docket No. 4377-69
United States Tax Court
T.C. Memo 1972-246; 1972 Tax Ct. Memo LEXIS 11; 31 T.C.M. (CCH) 1223; T.C.M. (RIA) 72246; December 18, 1972, Filed Sidney A. Soltz, for the petitioners. Clarence F. Frazier, Jr., for the respondent. HALL MEMORANDUM OPINION HALL, Judge: The respondent determined a $3,615.78 deficiency in petitioners' 1966 Federal income tax. The sole issue for decision is whether petitioners are entitled to a deduction in 1966 for a theft loss in *12 excess of the amount of their insurance recovery. The parties have filed a stipulation of facts which, together with accompanying exhibits, is incorporated herein by this reference. Petitioners, husband and wife, are residents of Miami, Florida, and filed their joint Federal income tax return for 1966 with the district director, Jacksonville, Florida. Petitioner Max Engel is a lawyer specializing in criminal law. On or about March 25, 1966, petitioners' home was burglarized and various items of personal property were stolen. Shortly thereafter petitioners filed a report with the local police which listed the stolen items. A similar list was submitted to the insurance company with whom petitioners had policies. Petitioners had one insurance policy covering loss of unscheduled personal property up to a limit of $14,800. Petitioners also had a personal floater policy covering loss of their stamp collections under which the insurance company agreed to pay the market value of any stamp collections stolen, but not in excess of the value shown for each such stamp collection on the schedule attached to the insurance policy. Petitioners received the sum of $7,750 in settlement of *13 their insurance claims under the two policies, $5,000 for loss of unscheduled personal property and $2,750 for loss of several of their stamp collections. [1] Petitioners claim they agreed to settle with the insurance company at less than full value of the stolen property because petitioner Max Engel was under great stress as a result of being under Federal indictment at the time, [2] and petitioner Lillian Engel was suffering from the results of an automobile accident, hypertension, high blood pressure and diabetes. The items missing after the burglary and petitioners' valuations therefor are as follows: Coin collections and cash
$1,600
Various personal items
247
Jewelry
8,523
Stamp collections 4,150
Total $14,520 The value petitioners assigned to the stolen stamp collections was their appraised value in 1963. Petitioners had had Leonard Roth, a stamp dealer, appraise their stamp collections for insurance purposes in 1963, and it was Mr. Roth's valuations that appeared on the schedule *14 attached to the personal floater policy. Mr. Roth testified as an expert in this case. Mr. Roth also testified that petitioners had purchased approximately $3,000 worth of stamps from him between the time of the 1963 appraisal and the burglary, but there is no evidence that any of these stamps were among those stolen. Petitioner Max Engel testified that he had purchased stamps from other dealers as well during this period, but again there is no evidence that any of these stamps were among those stolen. Petitioner Lillian Engel testified that the value assigned to the coin collections was based on the number of coins in the collections and their face value as related to her by their minor son. The son, who did not testify, was reported to have enjoyed counting the coins. Petitioner Max Engel testified that the value assigned to the various personal items (television, radio, cameras) was based on his recollection of their costs. No sales slips, cancelled checks or other evidence of their purchase price was presented. Mr. Engel did not attempt to estimate the fair market value of these items as of the time of the theft. The value assigned to purchased jewelry likewise was based *15 on petitioner Max Engel's testimony of his recollection of cost. Most of this jewelry was allegedly sold to petitioners by a Mr. Blatt, now deceased, who gave petitioners large discounts for cash payment, but refused to give them any receipt. Petitioner Max Engel could give no reason why Mr. Blatt, whom he asserted was a legitimate businessman, dealt only in currency and refused to give receipts. Petitioners offered no receipts or cancelled checks or other documentary evidence showing the cost of jewelry purchased from persons other than Mr. Blatt. Some of the lost jewelry had been given to petitioners. Petitioners attempted to introduce evidence as to the cost or adjusted basis of such jewlry to the donors, but all such evidence was stricken as inadmissible hearsay. The only values admitted in evidence for such jewelry were petitioner Max Engel's uncorroborated estimates of the fair market value of these items at the time of the theft. Petitioners offered no documentary evidence and no corroborating testimony, other than the expert testimony of Mr. Roth regarding the stamp collections, to establish cost, donor's basis or fair market value of any of the stolen items. Section *16 165 [3] allows as a deduction any loss by theft sustained during the taxable year and not compensated for by insurance or otherwise, but only to the extent the amount of the loss from each theft exceeds $100. The amount of a theft loss for purposes of Section 165 is the lesser of (1) the fair market value of the property immediately before the loss or (2) the adjusted basis of the property. Sec. 1.165-7 and 8, Income Tax Regs. Generally, the basis of property is its cost. Sec. 1.1012-1(a), Income Tax Regs. However, in the case of property acquired by gift, the basis of such property for determining loss for purposes of this case is the same basis it would have had in the hands of the donor or the fair market value of the property at the time of the gift, whichever is less. Sec. 1.1015-1(a)(1), Income Tax Regs.
We believe that petitioners' contemporaneous enumeration of the stolen items is a fairly accurate list. However, the value of the stolen property is purely a factual issue on which petitioners have the burden of proof. Welch v. Helvering, 290 U.S. 111 (1933); Rule *17 32, Tax Court Rules of Practice. We cannot find on the evidence before us that the amount of the loss petitioners sustained in 1966 was any greater than the amount of the insurance settlement, except in the case of the loss of the stamp collections. The stolen stamps were appraised at $4,150 by Mr. Roth in 1963. Petitioner Max Engel testified he paid more than the appraised value for the stamps, and on the basis of Mr. Engel's and Mr. Roth's testimony we conclude the stamps were worth at least their appraised value at the time of the loss. The insurance company settled petitioners' claim for the stamp collections under the personal floater policy at $2,750. The amount of petitioners' loss on the theft of the stamps is $4,150. Petitioners are entitled to deduct that amount, reduced by the insurance recovery and $100 limitation, as follows: Amount of loss
$4,150
Insurance recovery
(2,750)
Less Section 165(c)(3) limitation (100)
Loss deduction $1,300 Decision will be entered under Rule 50 Footnotes
1. The petitioners' incorrectly reported their total insurance recovery as $7,500 on their 1966 income tax return. ↩
2. The indictment was subsequently dismissed.↩
3. All section references are to the Internal Revenue Code of 1954, unless otherwise indicated.↩